1
2
3
4
5
6             IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9   Jesus Hurtado-Ruiz,                )    No. CIV-10-00554-PHX-PGR (MHB)
                                        )
10              Petitioner,             )    **<u>AMENDED</u>**
                                        )    **REPORT AND RECOMMENDATION**
11  vs.                                 )
                                        )
12  Eric H. Holder, et al.,             )
                                        )
13              Respondents.            )
                                        )
14  _____      )

15  TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT JUDGE:

16          On March 11, 2010, Jesus Hurtado-Ruiz filed a Petition for Writ of Habeas Corpus

17  pursuant to 28 U.S.C. § 2241, contending that he is being unlawfully detained (Doc. 1).  On

18  July 19, 2010, Respondents filed their Response in Opposition (Doc. 10).  Petitioner did not

19  file a Reply.  For the reasons stated below, the Court recommends that Hurtado-Ruiz's

20  petition be granted.

21                          **BACKGROUND**

22          Petitioner is a native and a citizen of Mexico admitted into the United States as an

23  immigrant with an SA-1 classification. (Doc. 10[1], Exh. 2.)  Between 2001 and 2008,

24  Petitioner sustained the following criminal convictions in Arizona courts.  On December 4,

25  2001, Petitioner was convicted of Shoplifting, in violation of Arizona Revised Statutes

26

27
                _____

28          [1]All exhibits referenced herein are the exhibits attached to Doc. 10, Respondents'
    Response in Opposition.

1   (A.R.S.)§13-1802, in the Phoenix Municipal Court, and was sentenced to eight days in jail.

2   (Exh. 3.)  On August 8, 2006, Petitioner was convicted of Assault, in violation of A.R.S. §13-

3   1203(A)(1), a domestic violence conviction pursuant to A.R.S. §13-3601(A), in the Phoenix

4   Municipal Court, and was sentenced to 70 days in jail.  (Exh. 4.)

5          On February 2, 2007, Petitioner was convicted of the crime of Disorderly Conduct,

6   in violation of A.R.S. §§13-2904, 707, and 802, in the Maricopa County Superior Court, and

7   was sentenced to 18-months probation.  (Exh. 5.)  On November 4, 2008, Petitioner was

8   convicted of Shoplifting, in violation of A.R.S. §13-1805, in the Phoenix Municipal Court,

9   and was sentenced to 10 days in jail.  (Exh. 6.)

10         On October 14, 2009, the Department of Homeland Security ("DHS") issued a Notice

11  to Appear, charging Petitioner as removable under Section 237(a)(2)(A)(ii) of the

12  Immigration and Naturalization Act ("INA"), 8 U.S.C. §1237(a)(2)(A)(ii), as amended, as

13  an alien who, after admission had been convicted of two crimes involving moral turpitude

14  not arising out of the same scheme of criminal misconduct.  (Exh. 7.) The Notice to Appear

15  referenced Petitioner's 2006, 2007, and 2008 convictions noted above.  (Id.)  Petitioner was

16  held without bond.  (Exh. 8.)  On October 29, 2009, the Immigration Judge ("IJ") set a

17  Custody Redetermination Hearing for November 9, 2009, at 10:30 a.m.  (Exh. 9.)

18         On November 9, 2009, Petitioner appeared for his removal hearing before the IJ and

19  admitted the allegations that he was convicted in 2006 of misdemeanor assault and that he

20  was convicted in 2008 of misdemeanor shoplifting.  (Exh. 10, at 12-14.)  A denial was

21  entered by the IJ as to the allegation that Petitioner was convicted in 2007 of the crime of

22  disorderly conduct.  (Id.) Petitioner conceded having been convicted of two crimes of moral

23  turpitude not arising out of a single scheme of criminal misconduct.  (Id., at 15.)  Petitioner

24  was advised that, assuming DHS were to sustain the charge of removability, he may be

25  eligible for relief from removal. (Id., at 17.) Petitioner  was given an application for

26  cancellation of removal and advised to file the completed application with the court at the

27  next hearing date. (Id., at 17.)  The attorney for DHS was not in possession of the conviction

28                                          - 2 -

1   documents, so the IJ gave him until November 30 to file them with the court.  (Id., at 18.)

2   The IJ continued the matter to December 14, 2009. (Id.)  Petitioner withdrew his request for

3   a bond hearing.  (Exh. 11.)

4          DHS submitted the conviction documents to the immigration court (Exh. 12), and

5   during the December 14, 2009, hearing before the IJ, Petitioner submitted his application.

6   (Id.)  The IJ reserved judgment on the charge of removability to review the conviction

7   documents and set the hearing with regards to Petitioner's application for cancellation of

8   removal on February 1, 2010.  (Id., at 22.)  On February 1, 2010, the IJ did not commence

9   the hearing, but issued a written order terminating removal proceedings.  In a thoughtful

10  analysis, the IJ concluded that the government had not met its burden of proving that

11  Petitioner's convictions for Disorderly Conduct and Assault are crimes involving moral

12  turpitude.  (Exh. 13.)

13         DHS filed a motion to reconsider on February 22, 2010 with the IJ, arguing that the

14  DHS   was   prevented   from   filing   a   Form   I-261,   Additional   Charges   of

15  Inadmissibility/Deportablility due to the IJ's premature termination of removal proceedings

16  prior to the scheduled "merits" hearing. (Exh. 14.)  DHS submitted at that time, for the first

17  time, records from the City of Phoenix Municipal Court, indicating that Petitioner had been

18  convicted a second time of misdemeanor shoplifting, on December 4, 2001.  (Id.) DHS

19  argued in its motion that, "had the scheduled hearing taken place, the Department would have

20  met its burden of proving by clear and convincing evidence that the respondent is removable

21  as charged."  (Id.,at 4.)  It is difficult to reconcile this representation with the procedural

22  record.  First, the IJ made clear to the attorney for DHS during the hearing on December 14,

23  2009, that the court was taking the removability determination under advisement and

24  therefore could decide the issue at any time based upon the documents submitted.  Second,

25  the IJ set the hearing on February 1, 2010, not as a "removal hearing," but to determine

26  Petitioner's application for cancellation of removal, should the court find DHS's allegations

27  sustained.  Finally, although the IJ did not commence the hearing on February 1, 2010, he

28

1   issued his decision the same day, and DHS did not allege that it stood ready that day to file

2   the Form I-261: in fact it took DHS until February 22 to file the Motion for Reconsideration,

3   and even then, City of Phoenix conviction documents were attached that were "received that

4   day." (Exh. 14, at 3.)

5          Before the IJ ruled on the Motion for Reconsideration, DHS filed an appeal with the

6   Bureau of Immigration Appeals, raising in addition to its argument that the IJ "prevented"

7   the government from filing additional charges, a claim that the IJ was wrong on his merits

8   determination. (Exh. 17.) That appeal remains pending. Though DHS's efforts in the

9   immigration courts to revive Petitioner's removal seem on their face to be nothing more than

10  grasping for a second chance after squandering the first, this Court must still decide the issue

11  raised by Petitioner in his petition, that of whether or not he is being unlawfully detained in

12  light of the termination of removal proceedings by the IJ on February 1, 2010.

13         On March 4, 2010, Petitioner filed his Petition for Writ of Habeas Corpus. (Doc. 1.)

14  In it he argues that he is being unlawfully detained because there are no charges of

15  removability pending against him, and no "pending decision" on whether or not Petitioner

16  should be removed from the United States. (Id., at 5-7.) He also argues that his prolonged

17  detention violates his constitutional rights given that he is a lawful permanent resident and

18  his prolonged detention is a result of government initiated delay.

19         DHS filed an appeal of the IJ's order of termination to the Board of Immigration

20  Appeals. (Exh. 16.) DHS submitted its brief on April 27, 2010. (Exh. 17.) That appeal

21  remains pending.

22                                **DISCUSSION**

23         In its Response, the government does not address the issue raised by Petitioner at all,

24  that is, whether ICE has the authority to detain someone when the IJ has entered an order

25  terminating the removal proceedings. The government cites 8 U.S.C. §1101(a)(47)(A) and

26  (B)(i) to support its argument that Petitioner's charges are "still pending," and therefore he

27

28                                      - 4 -

is still subject to mandatory detention.  Section 1101(a)(47) reads, in pertinent part, as follows:

> (47)(A).  The term "order of deportation" means the order . . .concluding that the alien is deportable or ordering deportation. (B). The order . . .shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such order; . . .

In the instant case, no order has been entered "concluding that [Petitioner] is deportable or ordering deportation."  The government's argument fails based upon a plain reading of the referenced statutory provision.  Furthermore, the government offers no support for the clear implication that Petitioner should be considered still in "removal proceedings" because of the government's pending appeal of the IJ's decision terminating the proceedings.

The government also argues that this Court should decline to review Petitioner's detention status because he failed to exhaust his remedies. The government argues that Petitioner "waived appeal of the IJ decision finding that he was an alien subject to mandatory detention under 8 U.S.C. §1226(c)."  This argument too misses the mark.  The order of the IJ to which the government refers, dated May 27, 2010, denying Petitioner's request for change in custody, noted only that the IJ had "no jurisdiction pursuant to 236 of the Act." (Exh. 15.)  Although the government's reading may be a fair one, the IJ also may have decided that the immigration court had no jurisdiction because the proceedings had been terminated.

That argument nonetheless fails for additional reasons. First, Petitioner filed his habeas petition after the IJ terminated the proceedings, and before he sought a custody review; thus his petition simply does not challenge the IJ's determination that the court did not have jurisdiction. Second, Petitioner had no issue to administratively exhaust, because he claims that the termination of removal proceedings also terminated the jurisdiction of ICE to detain him and terminated the jurisdiction of the immigration court.  The government simply does not answer the claim that Petitioner raises in his Petition that DHS does not have jurisdiction

to detain him, and thus, the Court will recommend that Petitioner be immediately released from custody.

The government also does not address Petitioner's claim that under the circumstances of his case, his detention is unconstitutionally prolonged.  Even if Petitioner current status is considered that of "pending removal proceedings," and is not eligible for release pursuant to 8 U.S.C. §1226(c), the Ninth Circuit has held that, it is "constitutionally doubtful" that Congress has the authority to imprison for excessively long periods lawfully admitted criminal aliens who are subject to removal.  Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005).

In Demore v. Kim, 538 U.S. 510 (2003), the Court addressed the detention of criminal aliens while removal proceedings are ongoing but before the statutory removal period begins.  "Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  Id. at 528.  Detention of a criminal alien during removal proceedings is, therefore, a constitutionally permissible part of the process.  Id. at 531.

In Demore, however, the Court operated on the assumption that the period of detention under § 1226(c) is relatively short.  See id. at 528-29.  In distinguishing the potentially lengthy periods of detention at issue in Zadvydas v. Davis, 533 U.S. 678, 689-697 (2001), the Court summarized that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."  Demore, 538 U.S. at 530-31.

In the instant case, Petitioner has been detained over a year since first taken into custody, and over eight months since the IJ terminated the removal proceedings.  The delay of over eight months is solely on account of appeal proceedings initiated by the Government. The Court finds that this is not expedited removal and Petitioner's continued detention is unconstitutional.  The Court will recommend that Petitioner be immediately released.

- 6 -

1    The Government also requests that this Court dismiss the following parties, named by

2  Petitioner as Respondents, from the case as improper Respondents.  Petitioner did not file an

3  objection to this request.  Accordingly, and for the reason that the Government's argument

4  is well taken, the Court will recommend that the following parties be dismissed from this

5  cause of action: Eric H. Holder, Janet A. Napolitano, and Chuck Delarosa.

6    **IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus

7  (Doc. 1) be **granted** as follows:  that the District Court Judge order DHS to immediately

8  release Petitioner from custody.

9    **IT IS FURTHER RECOMMENDED** that the following Respondents be dismissed

10 from this cause of action:  Eric H. Holder, Janet A. Neapolitan, and Chuck Delarosa.

11    This recommendation is not an order that is immediately appealable to the Ninth

12 Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

13 Appellate Procedure, should not be filed until entry of the district court's judgment.  The

14 parties shall have fourteen days from the date of service of a copy of this recommendation

15 within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);

16 Fed. R. Civ. P. 6(a), 6(b) and 72.  Failure to timely file objections to the Magistrate Judge's

17 Report and Recommendation may result in the acceptance of the Report and Recommendation

18 by the district court without further review.  See  United States v. Reyna-Tapia, 328 F.3d

19 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of

20 the Magistrate Judge will be considered a waiver of a party's right to appellate review of the

21 findings of fact in an order of judgment entered pursuant to the Magistrate Judge's

22 recommendation. See Fed. R. Civ. P. 72.

23    DATED this 28th day of October, 2010.

Michelle H. Burns

Michelle H. Burns
United States Magistrate Judge